1
2   David Bricklin, WSBA #7583
    Rick Eichstaedt, WSBA #36487
3   Bricklin & Newman, LLP
4   35 West Main, Suite 300
    Spokane, WA 99201
5   Telephone: (877) 264-7220
    Facsimile: (509) 835-3867
6   Email: rick@bnd-law.com
7
8
    Attorneys for Plaintiff
9   THE LANDS COUNCIL
10
11          UNITED STATES DISTRICT COURT FOR THE
12             EASTERN DISTRICT OF WASHINGTON
13
14  THE LANDS COUNCIL, a non-        Case No. ___ CV-12-0053-JLQ
    profit corporation.
15                                   ~~Proposed~~ CONSENT DECREE
                    Plaintiff,
16
17      vs.
18  CITY OF PULLMAN, a municipal
    corporation,
19
                    Defendant.
20
21
22
23
24
25
26
27
28

[Proposed] CONSENT DECREE                              Case No. _____

Plaintiff, The Lands Council, and Defendant, the City of Pullman (the "City"), subject to approval by the Court, hereby agree to the terms and conditions of this Consent Decree.  The Lands Council and the City are referred to collectively as the "Parties," or individually as a "Party," to this Consent Decree.

## RECITALS

1.     The Lands Council is a Washington nonprofit organization formed and operated for the purpose of preserving and revitalizing Inland Northwest forests, water, and wildlife through advocacy, education, effective action, and community engagement.  The Lands Council identifies environmental and health issues along the South Fork of the Palouse River and reaches out to river users who share its commitment to a river that is swimmable, fishable, and properly regulated;

2.     The City operates a Wastewater Treatment Plant ("WWTP") that collects, transports, and treats sewage for the City, covered by National Pollution Discharge Elimination System (NPDES) permit No. WA-004465-2 ("Wastewater Permit"), and a Municipal Separate Storm Sewer System ("MS4") that covers the entire incorporated area of the City and is regulated by the Eastern Washington Phase II Municipal Storm Water Permit ("Phase II Permit").  Washington State University ("WSU") is a major landowner in the City of Pullman and owns and operates portions of the MS4 located on or otherwise serving WSU's Pullman Campus.  WSU is a Secondary Permittee under the Phase II Permit and is implementing an independent stormwater program ("WSU Stormwater Program")(See www.ehs.wsu.edu/PH/SW/Stormwater.html);

3.     The City has engaged in, and plans to continue to engage in, operation of its MS4 and WWTP that service the City and has coordinated with and plans to continue to coordinate with, WSU regarding the WSU Stormwater Program;

4.     On April 21, 2010, pursuant to the requirements of the Federal Water Pollution Control Act ("Clean Water Act" or "CWA"), 33 U.S.C. § 1342, The Lands Council sent the City a 60-day Notice of Intent Letter ("Notice Letter");

5.     The Notice Letter alleged that the City has violated and continues to violate the Clean Water Act along with the terms and conditions of the Phase II Permit and Wastewater Permit;

6.     On April 22, 2010, the City acknowledged receipt of the Notice Letter and later expressed its intent to work with The Lands Council to ensure that the MS4 and WWTP are in compliance with legal obligations and the water protection goals for the South Fork of the Palouse River environment;

7.     The Lands Council and the City have been engaged in settlement talks, initiated in June 2010, and now, to avoid the time, expense and uncertainty of protracted litigation, with no admission of liability or the validity of any claim, allegation or defense, and subject to approval by the Court, the Parties agree to the following terms and conditions set forth in this Consent Decree.

NOW THEREFORE, it is hereby stipulated and agreed between the Parties, and ordered and decreed by the Court, as follows:

## I.     GENERAL OBJECTIVES

1.   The objectives of this Consent Decree are:

　　　a.     To ensure that the City complies with the Clean Water Act;

　　　b.     To ensure that the City continues to use, implement, and improve ways, means, and methods to minimize pollution discharges from the MS4 and WWTP systems into the South Fork of the Palouse River; and

　　　c.     To further the goals and objectives of the Clean Water Act

## II.     DEFINITIONS

Unless otherwise expressly defined herein, terms used in this Consent Decree, which are defined in the CWA or in regulations, or rules promulgated under the

CWA, have the meaning assigned to them in the applicable statutes, regulations, or rules.

### III.   JURISDICTION AND VENUE

For the purposes of entry and enforcement of this Consent Decree, the Parties stipulate that the United States District Court for the Eastern District of Washington has jurisdiction over the Parties and subject matter of this action.  The Parties further stipulate that venue is appropriate in the United States District Court for the Eastern District of Washington.  Solely for the purposes of entry and enforcement of this Consent Decree, the City agrees that it shall not challenge The Lands Council's standing to bring this action and/or to enforce the terms of this Consent Decree.

### IV.  EFFECT OF CONSENT DECREE

The Lands Council does not, by its consent to this Consent Decree, warrant or aver in any manner that the City's compliance with this Consent Decree will constitute or result in compliance with any Federal, State, or local law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of the City to comply with all Federal, State and local laws, and regulations governing any activity required by this Consent Decree.

Neither this Consent Decree, nor any payment pursuant to the Consent Decree, shall constitute evidence or be construed as a finding, adjudication, or acknowledgement of any fact, law, or liability, nor shall it be construed as an admission or violation of any law, rule, regulation, permit, or administrative order by the City.  However, this Consent Decree and/or any payment pursuant to the Consent Decree may constitute evidence in actions seeking to enforce compliance with this Consent Decree.  The City maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

## V.    APPLICABILITY

This Consent Decree addresses all violations alleged by The Lands Council from April 21, 2005, up to and through the Termination Date of the Consent Decree, as defined below.

The Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties to its terms.

The Parties, including any successors, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement and enforce its terms.  Except as provided in this Consent Decree, no change in ownership or corporate or other legal status of the City or any transfer of the City's assets or liabilities shall in any way alter the responsibilities of the City or any of its successors or assigns thereof, under this Consent Decree.

## - VI.    EFFECTIVE DATE AND TERMINATION DATE

The term "Effective Date," as used in this Consent Decree, shall mean the date the Court orders entry of the consent decree.

The term "Termination Date" as used in this Consent Decree shall mean the date of termination of the Consent Decree, which shall occur five (5) years from the Effective Date, so long as all payments, fees, and costs due under or pursuant to this Consent Decree, including, but not limited to, provisions governing Supplemental Environmental Projects, Attorney's Fees and Costs, and Dispute Resolution, have been paid in full; Provided, however, the "Termination Date" shall be six (6) years from the Effective Date if the City is not issued a new Wastewater Permit on or before December 31, 2014.

In the event that the City's MS4 system and/or WWTP ceases to be operated and maintained by the City or any successors, the City shall send a letter to The Lands Council at the address listed below, stating facts justifying full or partial

termination of the City (full for both MS4 system and WWTP, or partial for either the MS4 or the WWTP) from the Consent Decree and requesting a stipulation to dismiss the City either fully or partially. The Lands Council shall respond to the City's request within thirty (30) days, and shall not unreasonably withhold approval of a stipulation. The stipulation shall be substantially in the following form: "The Lands Council and the City hereby stipulate and agree that the City is hereby released from all (or part of the) obligations under the Consent Decree and that The Lands Council shall not seek to enforce any term of this Consent Decree against the City whether or not the District Court approves this stipulation." If The Lands Council does not agree to stipulate to the City's request, The Lands Council or the City may invoke the Formal Dispute Resolution process pursuant to Section X of this Consent Decree. The City agrees that its successors, contractors, or agents who may operate or maintain the MS4 system and/or WWTP shall be bound to the terms of this Consent Decree.

## VII.  COMMITMENTS OF DEFENDANT

Upon the Effective Date of this Consent Decree, as provided in Section VI, unless otherwise indicated, subject to any required regulatory approvals, and subject to modifications that may be required to reflect any applicable changes in legal or regulatory requirements during the operative periods of these provisions, the City agrees to develop, implement, and comply with the Employee Training Requirement, Stormwater Program Enhancement Plan, and WWTP Obligations.

**A.    Employee Training Requirement**

No later than twelve (12) months after the Effective Date, the City shall implement a program to train and educate designated employees regarding compliance with the Wastewater Permit and the requirements of this Consent Decree, including, but not limited to, all employees responsible for Best

1   Management Practice ("BMP") implementation and maintenance and those

2   employees responsible for performing sampling at the WWTP.

3   Training will be provided on the proper implementation of all structural and

4   non-structural BMPs at the WWTP and proper sampling and reporting. The

5   training will be conducted in English and all other languages appropriate to non-

6   English speaking employees.

7   The employee training will be repeated as necessary to ensure compliance

8   with the terms of this Consent Decree and the Wastewater Permit, and always prior

9   to an employee becoming responsible for compliance with the Wastewater Permit

10  or the terms of this Consent Decree. The City shall maintain training records to

11  document compliance with this paragraph at the WWTP for five years, and will

12  make such records available to The Lands Council within fourteen (14) days of a

13  written request.

14  **B.    Stormwater Program Enhancement Plan**

15       1.    The City shall implement and complete the Stormwater Program

16  Enhancement Plan (attached hereto as Exhibit A) no later than twelve (12) months

17  after the Effective Date.

18       2.    The City shall sample stormwater annually for PCBs at the following

19  two locations: the Stadium Way drain and Larry Street storm drain. The Stadium

20  Way drain was sampled by the Department of Ecology ("Ecology") for PCBs

21  previously. The sampling shall occur when the City collects PCB samples at the

22  WWTP, beginning March 2012. The stormwater samples will be 24-hour

23  composites.

24       3.    Three years after the Effective date, the City will review the PCB data

25  and based, in part, on that data prepare a Revised Stormwater Program

26  Enhancement Plan. The City shall provide The Lands Council with a copy of a

27  draft of such Revised Plan for review and comment prior to submitting the Revised

28

Plan to Ecology.  The parties will work in good faith to resolve any disagreements regarding the content of the Revised Plan within 60 days.  If the parties are not able to resolve the disagreement within 60 days, The Lands Council may pursue all remedies available consistent with Section XII.

**C.**   **WWTP Obligations**

The City shall complete all permanent improvements, interim reports, and other requests according to the scope of work and to the implementation schedule outlined below:

1.   Permanent Improvements

a.   No later than twelve (12) months after the Effective Date, the City shall investigate and deliver a feasibility study that includes: 1) an evaluation with regard to upsizing, expanding or replacing the influent pump station to have a capacity of 13 mgd with the largest single unit out of service; 2) a hydraulic analysis of the headworks; and 3) a hydraulic analysis of the primary clarifiers, including replacing the primary effluent line from primary clarifier No. 1 with an appropriately-sized pipe, if determined necessary.  No later than twelve (12) months from the completion of the feasibility study, the City shall complete the design to improve the headworks as necessary to remedy any capacity inadequacies identified by the hydraulic analysis; to upsize, expand and/or replace the influent pump station to have a capacity of 13 mgd with the largest single unit out of service; and to make improvements to the primary clarifiers, as determined necessary in the feasibility study.  No later than twenty-four (24) months from completion of the design, the City shall substantially complete construction.

b.  The phrase "substantial completion of construction" as used in this Consent Decree shall mean the state of completion reached when an improvement upon the WWTP may be used for its intended use.

c.  The City shall proceed immediately after the Effective Date with the Secondary Process Improvements Project (as described in the City's *Secondary Process Improvements - Schematic Design Phase* (CH2M Hill, March 2006)) and provide The Lands Council with a funding status report no later than six (6) months after the Effective Date.  If the City receives funding through the Clean Water State Revolving Fund, the City shall substantially complete construction no later than thirty-three (33) months after the Effective Date.  If the City does not receive state funding and needs to issue bonds for financing, the City shall substantially complete construction no later than thirty-nine (39) months after the Effective Date.

d.  To address issues with the WWTP's disinfection system, the City shall proceed with upgrades to the current system for more efficient dosage control.  No later than nine (9) months after the Effective Date, the City shall verify that construction is substantially complete.

e.  No later than eighteen (18) months after the Effective Date, the City shall install an influent bypass measurement device and required screen, alarm and annunciator as agreed upon by The Lands Council's consultant and the City, subject to approval by Ecology.

2.  Interim Commitments

a.   The City shall deliver progress reports at six (6) month intervals regarding (1) the feasibility study; (2) construction of improvements to the influent pump station, headworks, and primary clarifiers; (3) construction of the Secondary Process Improvements Project; and (4) the influent bypass measurement device, alarm and annunciator, until construction is substantially complete.

3.   Other Requests

a.   The City shall provide the following information no later than three (3) months after the Effective Date: 1) Deliver technical memorandum on waste loads investigated during the Fall of 2010; 2) Evaluate the primary treatment with chemical enhancement concept, and deliver to The Lands Council a copy of the technical memorandum; and 3) Submit a report with estimates of staff and laboratory needs.

b.   The City shall provide an updated O&M Manual no later than twelve (12) months after the Effective Date, and a revision to be completed no later than twelve (12) months after completion of the Permanent Improvements described in §1.a.

c.   The City shall, within thirty-three (33) months of Ecology's issuance of a new Wastewater Permit, prepare a Facility Plan in accordance with the Environmental Protection Agency's ("EPA") *Guidance for Preparing a Facility Plan (MCD-46)* and Ecology's *Criteria for Sewage Works Design*.

**D.   Monitoring and Modification**

During implementation of the Stormwater Program Enhancement Plan and WWTP Obligations, the Parties shall meet quarterly to allow the City to update The

Lands Council regarding the progress and effectiveness of the Stormwater Program Enhancement Plan and WWTP Obligations. The Parties agree that telephonic conferences are sufficient, unless either party requests differently for a particular meeting. The Parties agree that The Lands Council's consultant may participate in the stead of The Lands Council.

If as a consequence of information discovered during implementation the City modifies the obligations or plan in any way, the City shall send those modifications to The Lands Council for comment. The Lands Council shall have thirty (30) days to provide written comments. The City shall have thirty (30) days to provide a written response outlining either 1) how the Land's Council's recommendations will be implemented; or 2) why the City will not implement the recommendations. Both parties reserve the right to invoke the dispute resolution set forth in Section X if they cannot reach agreement on the modifications.

If at any point during the five (5) years set forth above, the Phase II Permit or Wastewater Permit is modified in a manner that will impact the Stormwater Program Enhancement Plan or WWTP Obligations; the City shall send those modifications to The Lands Council for comment. Further, if the City seeks a modification of either permit from Ecology, the City agrees to concurrently serve The Lands Council with its modification request. The Lands Council shall have thirty (30) days to provide written comments. The City shall have thirty (30) days to provide a written response outlining either 1) how The Land's Council's recommendations will be implemented; or 2) why the City will not implement the recommendations. Both parties reserve the right to invoke the dispute resolution set forth in Section X if they cannot reach agreement on the modifications.

**E.    <u>Costs for Monitoring of Consent Decree Compliance</u>**

Understanding that The Lands Council is a non-profit organization with limited resources, the City agrees to compensate The Lands Council for time spent

by legal staff or technical consultants reviewing compliance reports and other documents generated pursuant to this Consent Decree in the amount of $25,000. The City shall pay this sum within sixty (60) days of the Effective Date of this Consent Decree to offset the cost of monitoring compliance with this Consent Decree. Payment shall be made in the form of a single check payable to "Gonzaga University Legal Assistance Trust" addressed to:

> Rick Eichstaedt
> Bricklin & Newman, LLP
> 35 West Main, Suite 300
> Spokane, WA 99201

Once payment has been tendered, all bills for time spent by legal staff or technical consultants in monitoring compliance with this Consent Decree shall be sent directly to plaintiff's counsel and paid out of the "Gonzaga University Legal Assistance Trust." University Legal Assistance shall provide the City with a yearly accounting, including the bills paid, the work conducted, and the remaining amount in the Trust account. If costs for monitoring do not exceed $25,000 over the five (5) year term of this Consent Decree, all money remaining in the Trust account shall be paid to Palouse Clearwater Environmental Institute ("PCEI") in accordance with Section IX below.

## VIII. COMMITMENT OF PLAINTIFFS

1.   Subject to approval by the Court, pursuant to this Consent Decree:

A.    The Lands Council's Complaint, and all claims therein, shall be dismissed with prejudice upon the Effective Date, pursuant to Federal Rule of Civil Procedure 41(a)(2), and judgment shall be entered accordingly; and

B.    The Court shall retain jurisdiction over the Parties until the Termination Date of this Consent Decree with respect to disputes arising under this Consent Decree for which any of the Parties invoke dispute resolution.

2. The City plans to request that Ecology review the Palouse TMDL to reconsider the waste load allocation contained therein. The Lands Council agrees not to object to such a request.

## IX.  SUPPLEMENTAL ENVIRONMENTAL PROJECTS

1. The City shall implement and complete the following Supplemental Environmental Project's ("SEP"):

     A.  Within sixty (60) days of the Effective Date of this Consent Decree, the City shall pay a sum of $150,000 to the PCEI, an Idaho non-profit corporation, to fund the costs of implementing a Riparian Preservation Project (hereafter "the Project"). The Project shall target identified areas within the Palouse River watershed, and shall ensure that projects within the incorporated areas of the City of Pullman receive priority ranking when determining an appropriate project.

     B.  The payment shall be made via certified check payable to "Palouse Clearwater Environmental Institute," and sent via certified mail, return receipt requested, to:

       Palouse Clearwater Environmental Institute
       P.O. Box 8596
       Moscow, Idaho 83843

The Project shall include planting native vegetation along identified riparian areas within the Palouse watershed, with special consideration given to projects within the City. The Project may also utilize additional techniques such as channels, bank re-sloping, tree revetment, and erosion control blankets necessary to improve the water quality along the Palouse River. During the first six (6) months of the project, PCEI staff shall assess potential problems along watershed

water bodies and develop a specific plan.  If feasible, a section of the specific plan will focus on the riparian areas just downstream of the Pullman Waste Water Treatment Plant.  PCEI shall send a copy of this specific plan to The Lands Council and the City.  The City shall have 30 days to comment on the plan.  PCEI shall use best efforts to address the City's comments.

2.      In accordance with EPA's SEP Policy, PCEI shall provide an annual project report to EPA and DOJ explaining its activities and achievements and including a complete financial accounting of all income and expenses associated with the Project.  PCEI agrees to provide the City and The Lands Council with a copy of the annual report.  The Project report shall be delivered to EPA and the Parties at twelve (12) month intervals calculated from the date of the grant's receipt.

## X.     DISPUTE RESOLUTION AND ENFORCEMENT

If a dispute under this Consent Decree arises, or if any Party believes that a breach of this Consent Decree has occurred, the Parties shall meet and confer within fourteen (14) days of receiving written notification from any other Party of a request for a meeting.  This notification shall explicitly state the nature, underlying facts, and legal grounds for the dispute or alleged breach.  At this meeting, the Parties shall discuss the dispute or alleged breach and seek to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute or alleged breach.  If the Parties fail to meet and confer or if the meeting does not resolve the issue, and after at least seven (7) days have elapsed since the meet and confer occurred or should have occurred, each Party shall be entitled to all rights and remedies under the law, including bringing a motion before the United States

District Court for the Eastern District of Washington, which shall retain jurisdiction over the action for the Term of this Consent Decree, for the limited purposes of enforcement of the terms of this Consent Decree.

## XI.   REIMBURSEMENT OF FEES AND COSTS.

1.     The City shall reimburse The Lands Council in the amount of $83,687.43 for attorney's fees and costs, consultant and expert fees and costs, and all other fees and costs incurred by The Lands Council in connection with the litigation resolved by this Consent Decree.

2.     The City shall provide such reimbursement by check, payable and delivered as follows, within thirty (30) days of the Effective Date payable to "Gonzaga University Legal Assistance Trust" to be used exclusively for reimbursement of The Lands Council's attorneys, expert/consultant fees and litigation costs in this action, and delivered to:

> Rick Eichstaedt
> Bricklin & Newman, LLP
> 35 West Main, Suite 300
> Spokane, WA 99201

## XII.   WAIVER AND RELEASES

1.     The Lands Council's Waiver and Release:  The Lands Council, on its own behalf and on behalf of its officers, directors, employees, members, parents, subsidiaries, affiliates and each of their successors, assigns, insurers, agents, attorneys, consultants and other representatives:

A.     Releases the City and its respective officers, directors, employees, departments, contractors and subcontractors, and each of their predecessors, successors, assigns, insurers, agents, attorneys, consultants and other representatives (collectively the "Released Parties," or each individually a "Released Party") from, and waives, all claims alleged in this action, including

1 without limitation all claims for injunctive relief, damages, penalties, fines,
2 sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs,
3 expenses or any other sum incurred or for matters relating to the claims and
4 allegations that were asserted by The Lands Council in its Complaint, and Notice
5 Letter, relating to alleged violations of the Clean Water Act, Phase II Permit, and
6 Wastewater Permit, occurring or arising up to and including the Effective Date;

7       B.   Agrees to execute covenants not to sue Released Parties and
8 each Released Party with respect to The Lands Council's released claims that may
9 occur or arise up to and including the Termination Date for matters relating to the
10 claims and allegations that were asserted by The Lands Council in its Complaint
11 and Notice Letter.

12       C.   However, this release does not operate to preclude the City's
13 liability as to any claims which were unknown by The Lands Council at the time of
14 executing this Consent Decree or were not included in the Complaint or NOI,
15 including claims arising from the failure to comply with the terms of any new or
16 substantially modified conditions in a renewed and/or reissued NPDES permit
17 applicable to the MS4 and/or WWTP.

18

19     2.   The City's Waiver and Release of The Lands Council:  The City, on its
20 own behalf and on behalf of those Released Parties under its control, releases The
21 Lands Council and its respective officers, directors, employees, members, parents,
22 subsidiaries, and affiliates, and each of its successors, assigns, insurers, agents,
23 attorneys, consultants and other representatives from, and waives all claims which
24 arise from or pertain to, The Lands Council's released claims, occurring or arising
25 up to and including the Termination Date.

26     3.   No Admission:  The Parties enter into this Consent Decree for the
27 purpose of avoiding the time, expense, and uncertainty of further litigation.
28 Nothing in this Consent Decree shall be construed as, and the Released Parties

expressly do not intend to imply, any admission as to any alleged fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Decree constitute or be construed as an admission by the Released Parties of any alleged fact, finding, conclusion, issue of law, or violation of law.  However, this paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Consent Decree.

## XIII.  MISCELLANEOUS PROVISIONS

1.    Court Approval:  This Consent Decree is subject to notice, review and comment by the United States Department of Justice and the Environmental Protection Agency, and approval by the Court, as provided by the Clean Water Act.

2.    Effective Date:  The Effective Date of this Consent Decree shall be the date of approval and entry by the Court.

3.    Term of Consent Decree/Termination Date:  As provided above, this Consent Decree shall continue in effect for five (5) years from the Effective Date.

4.    Execution in Counterparts:  The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

5.    Severability:  In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected, but the Parties shall use the Dispute Resolution procedures (including access to Court, if necessary) to develop a functionally equivalent provision to substitute for the unenforceable provision.

6.    Construction:  The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.

7.    Authority to Sign:  The undersigned are authorized to execute this Consent Decree on behalf of their respective Parties and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

8.   Integrated Consent Decree:  All agreements, covenants,
representations and warranties, express or implied, oral or written, of the Parties
concerning the subject matter of this Consent Decree are contained herein.

9.   Delivery of Notice or Documents:  Any notices or other documents
required or provided for by this Consent Decree or related thereto that are to be
provided to any of the Parties pursuant to this Consent Decree shall be sent by
facsimile, e-mail transmission, or first-class mail to each of the following
representatives of the Parties.  Notice shall be deemed to be given and received on
the date received by facsimile or e-mail transmission, if such notice is given by
facsimile or e-mail transmission to all recipients between 9:00 a.m. and 5:00 p.m.
Pacific Standard Time ("PST") on a business weekday.  If notice is given by
facsimile or e-mail transmission after 5:00 p.m. PST on a weekday or on a weekend
day, notice shall be deemed received on the next business weekday.

Notices or documents for The Lands Council shall be sent to:

Rick Eichstaedt
Bricklin & Newman, LLP
35 West Main, Suite 300
Spokane, WA 99201
Telephone: (877) 264-7220
Facsimile: (509) 835-3867
Email: rick@bnd-law.com

and to:

Mike Petersen
The Lands Council
25 W. Main St. Suite 222
Spokane, WA 99201
Telephone: (509) 838-4912
Facsimile: (509) 838-5155
Email: mpetersen@landscouncil.org

Notices of documents for the City shall be sent to:

Mayor
City of Pullman
325 SE Paradise St.
Pullman, WA 99163-2631
Telephone:  (509) 338-3316
Facsimile:  (509) 334-2751
Email:  glenn.johnson@pullman-wa.gov (current)

With copies sent to:

Craig Trueblood
K&L Gates, LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
Phone: (206) 623-7580
Facsimile: (206) 370-6196
Email: craig.trueblood@klgates.com

Public Works Director
City of Pullman, Public Works Department
325 SE Paradise St.
Pullman, WA 99163-2631
Telephone: (509) 338-3222
Facsimile: (509) 338-3282
Email: mark.workman@pullman-wa.gov (current)

10.   Facsimile Signatures:  The Parties' signatures to this Consent Decree transmitted by facsimile shall be deemed binding.

11.   No Assignment:  No assignment of the rights or obligations of the Parties set forth in this Consent Decree shall be effective or enforceable unless the assignment is approved in writing by both Parties.

12.   Impossibility of Performance:  No Party shall be considered to be in default in the performance of any of its obligations under this Consent Decree when performance becomes impossible due to circumstances beyond the Party's control, or when failure to perform is materially contributed to by circumstances beyond the

Party's control, including without limitation any Force Majeure, including any act of God, war, fire, earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism, sabotage or terrorism; restraint by court order or public authority; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. "Circumstances beyond the Party's control" shall not include normal inclement weather, economic hardship or inability to pay. Any Party seeking to rely upon this paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the failure of performance.

13.   Court Approval:  If for any reason the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Court.  If the Parties are unable to modify this Consent Decree in a mutually acceptable manner within thirty (30) days, this Consent Decree is voidable at the sole discretion of any Party and the terms of this Consent Decree may not be used as evidence in any litigation between the Parties.

The Parties hereto enter into this Consent Decree and submit it to the Court for approval and entry as a final judgment.

APPROVED AS TO CONTENT AND FORM:

THE LANDS COUNCIL

By: _____
Mike Petersen, The Lands Council

CITY OF PULLMAN

By: _____
Glenn A. Johnson, Mayor

Attest: _____
William F. Mulholland, Finance
Director

DATED _____

1

2

3

4

5

6

7

8

9  IT IS HEREBY ORDERED that this Consent Decree is approved and entered

10  accordingly, subject to the ongoing jurisdiction of the Court, for the purposes of

11  enforcement of this Consent Decree.

12

13  APPROVED AND SO

14  ORDERED:

.15

16  _____

17  Justin L. Quackenbush , Judge
    United States District Court

18

19  Dated: _May 3, 2012_

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit A**

Stormwater Program Enhancement **Plan**

# CITY OF PULLMAN
## Stormwater Program Enhancement Plan
### December 2011

## Table of Contents

1.0    Background

2.0    The City's Stormwater Program

3.0    Enhancements

      3.1    Facility Inventory

      3.2    Public Outreach and Education

      3.2    Stormwater Maintenance

      3.3    Fecal Coliform Studies

      3.4    Street Sweeping

4.0    Future Enhancements

## 1.0   BACKGROUND

The City of Pullman ("City") has a stormwater collection system throughout the city limits. All water collected in the stormwater system is routed to outfalls that eventually discharge to the South Fork Palouse River ("SF Palouse") and its tributaries.

The City's stormwater collection system is subject to the regulatory requirements imposed by the National Pollutant Discharge Elimination System ("NPDES") Eastern Washington Phase II Municipal Stormwater Permit[1] ("Stormwater Permit"). The City's stormwater collection system is also subject to the Washington State Department of Ecology's ("Ecology's") Palouse River Chlorinated Pesticide and PCB Total Maximum Daily Load (July 2007)("PCB TMDL"), and South Fork Palouse River Fecal Coliform Total Maximum Daily Load (October 2009)("Coliform TMDL"). The City's stormwater collection system was assigned a wasteload allocation under each TMDL. The PCB TMDL concludes that "compliance with the Phase II stormwater permit is the only requirement the city of Pullman needs to fulfill to accomplish the objectives of [the] TMDL" with respect to the City's stormwater collection system. PCB TMDL, p. 61. The Coliform TMDL recommends a number of measures for reducing fecal coliform bacteria in stormwater discharges. Coliform TMDL, pp. 99-100.

The City has elected to collaborate with the Lands Council in preparing this Stormwater Program Enhancement Plan, based on the Lands Council's proactive interest in addressing the City's stormwater discharges. This Plan is meant to further the City's compliance with the Phase II Permit, the PCB TMDL and the Coliform TMDL and to further protect water quality in the South Fork Palouse River and its tributaries.

## 2.0   THE CITY'S STORMWATER PROGRAM

The Stormwater Permit requires the City to develop and implement a comprehensive stormwater management program by February 2012 that includes the following six main elements:

1) Public Education & Outreach
2) Public Involvement & Participation
3) Illicit Discharge Detection & Elimination
4) Construction Site Stormwater Runoff Control
5) Post-Construction Stormwater Management for Development
6) Pollution Prevention & Good Housekeeping for Municipal Operations

---

[1]    Eastern Washington Phase II Municipal Stormwater Permit, Issuance Date: January 17, 2007, Effective Date: February 16, 2007, Expiration Date: February 15, 2012, Modification Date: June 17, 2009, issued pursuant to the Clean Water Act's National Pollution Discharge Elimination System by State of Washington Department of Ecology.  The City's Stormwater NPDES Permit Coverage Number is WAR 04-6504.

To meet these directives, in 2008 the City chose to create a new Stormwater Services Division within the Public Works Department. Early in 2009, the City created a stormwater utility and began charging owners of developed property a utility fee to cover the cost of stormwater management. The new utility is expected to generate approximately $1,000,000/year in revenue to be solely used on stormwater management in Pullman. To implement the new program, the City hired a Stormwater Services Program Manager in 2008 and a Stormwater Field Technician in 2010. The City is entering the fifth and final year of the current Stormwater Permit cycle and all Stormwater Permit obligations have been met to date. Most notable of these Stormwater Permit obligations included passage of an illicit discharge detection and elimination ordinance in 2009, and recent passage of a combined construction/post-construction stormwater ordinance in January of 2011.

Pursuant to the new construction ordinance, as of February 15, 2011, all construction or grading projects within the City of Pullman that disturb more than 5,000 ft² are required to apply for a City construction stormwater permit in addition to all other required permits. The new permits are intended to facilitate better communication between City staff, builders, developers and property owners, and to provide better tracking of projects for satisfying new State reporting requirements. There are also new requirements for regular inspections and long-term maintenance of both public and private stormwater facilities (i.e. detention ponds).

Further progress toward developing the City's stormwater program in 2010 included:

- Public Education & Outreach – stormwater information distributed on the City's website, through news media, direct mailings; attendance at community events and interaction with the Pullman School District.

- Public involvement – the City partnered with the Palouse-Clearwater Environmental Institute (PCEI) to sponsor the 6th Annual Pullman Stream Clean-up event in April, launched a storm drain stenciling program, and provided stenciling kits for check-out by community volunteer groups.

- Illicit Discharge Detection & Elimination (IDDE) – The City completed an initial inventory and inspection of 2,000 catch basins and 964 manholes using GPS technology; worked with the Engineering Division to update City storm drain maps; and responded to and investigated stormwater/illicit discharge related complaints.

- Construction Site Runoff Control – In addition to facilitating adoption of the Construction/Post-Construction Stormwater Ordinance in January of 2011, the City conducted 155 documented construction-related erosion control inspections; participated in site plan review of new construction; and responded to construction site-related complaints.

- Post-Construction Stormwater Management – Stormwater Services staff coordinated with Engineering Division staff to update City MS4 maps to include detention ponds and other public & private stormwater facilities.

- Pollution Prevention & Good Housekeeping for Municipal Operations – Stormwater Services staff developed Stormwater Pollution Prevention Plans (SWPPPs) for the City's wastewater treatment plant, transit facility and the Maintenance and Operations yard, as part of development of an overall Operations and Management Plan for controlling pollution originating from all City facilities.

This Stormwater Program Enhancement Plan builds on the City's prior actions to further compliance with the Stormwater Permit and the TMDLs to protect water quality in the South Fork Palouse River and its tributaries.

## 3.0   ENHANCEMENT MEASURES

This Stormwater Program Enhancement Plan will focus on public outreach and education, stormwater facility maintenance, fecal coliform studies and increased street sweeping. The activities described below will be implemented within one year of the Effective Date of the Consent Decree.

### 3.1   Facility Inventory

As previously referenced, the City completed an initial inventory of its 2,000 catch basins and 964 manholes using GPS technology in 2010.  As part of this Plan, the City will perform work to add its detention ponds and known outfalls to its GPS inventory.

### 3.2   Public Outreach and Education

**Stormwater in the Classroom**
The City will continue partnering with the Pullman School District and PCEI to challenge students with water quality and stormwater related exercises that compliment the District's science curriculum. The City will contract with PCEI to work with teachers to create and deliver approximately 30 - 35 stormwater programs in local schools.

Efforts will focus on Fifth and Eighth Grades at Jefferson Elementary, Sunnyside Elementary, Franklin Elementary, Lincoln Middle School and Royal Garrison School. A lesson on stormwater will also be created for tenth graders at Pullman High. Students will also be encouraged to get outside the classroom and attend the City's annual stream clean-up event (see below).

**Annual Pullman Stream Clean-up**
The City will again partner with PCEI to conduct its Annual Stream Clean-up event in the spring.  In addition to staff and equipment, the City will provide full financial sponsorship of PCEI's involvement.  This event typically involves more than 100

volunteers in collecting trash along the segments of the SF Palouse and its tributaries that run through Pullman. In 2010, volunteers filled eight 55-gallon drums with recyclables and an entire dumpster with trash. This year, the City hopes to increase turnout for the event and expand the coverage area for litter removal.

**Pullman Adopt-a-Stream Program**
The City will contract with PCEI to launch a pilot program modeled after the adopt-a-highway program, where community groups and/or businesses can "adopt" a segment of stream in town and then be responsible for keeping it clean. The program builds on the City's Annual Stream Clean-up to increase community involvement and support in stormwater management issues. The goal is for each segment of the waterways to have a "stream steward" – a community group, business, family, or other group – to implement ongoing cleanup efforts and also participate in a Fall River Festival. The City will install and maintain Adopt-a-Stream signs in various locations and provide staff and financial support for the program.

### 3.3    Stormwater Facility Maintenance

The City has approximately 2,000 catch basins, 964 manholes, 37 miles of pipe, 14 miles of natural drainages, 85+ outfalls, 30+ detention ponds and other public stormwater drainage facilities within its limits.

To facilitate maintenance of those facilities, the City will purchase additional maintenance equipment, including a combination water jet-vactor truck. The truck will cost more than $350,000. The truck will allow City staff to clean catch basins and remove sediments as part of a regular Operations and Maintenance schedule.

The City will also dedicate 1.08 full-time equivalent (FTE) maintenance staff members for performing regular maintenance on the stormwater system. As part of this Plan, the City will complete maintenance on at least 95 percent of its catch basins.

### 3.4    Fecal Coliform Studies

**Stadium Way Fecal Coliform Bacteria Study**
The City will conduct a pilot study to attempt to identify sources of fecal coliform bacteria within the drainage basin near the stormwater outfall to Missouri Flat Creek at Stadium Way and North Grand Avenue in Pullman. As part of the TMDL process, the Washington State Department of Ecology ("Ecology") identified this outfall as needing a reduction in fecal coliform contribution. The drainage basin is shared by both the City and Washington State University (WSU).

The City will contract with an environmental consultant to perform traditional microbial and flow monitoring of the outfall and conduct further investigation to characterize the system and track sources of fecal coliform. The consultant will conduct reconnaissance throughout the system using alternative methods and technology that, if successful, may provide Pullman (and other jurisdictions) with a more reliable and cost-effective

means of identifying illicit connections to the MS4. Information obtained through the study will be used to facilitate further efforts to reduce fecal coliform sources to the stormwater system in this area.

### 3.5    Street Sweeping

The City has approximately 62 miles of streets within its jurisdiction to sweep.  Studies show that frequent street sweeping can be an effective best management practice for reducing pollutants in stormwater.  The City's current street sweeping plan provides for all streets to be swept twice per year: once in the Spring and once in the Fall. The City also currently allocates four (4) staff hours each week on sweeping streets in the commercial district. As part of this Plan, the City will add an additional eight (8) hours of staff time per week for sweeping all other streets in the City on a rotational basis, taking into account that street sweeping is not feasible when streets are covered with significant snow or ice. This will approximately triple the average weekly amount of time allocated for street sweeping, not including the spring and fall sweeping.